983 F.2d 119
 Roger BUCKNER, Plaintiff-Appellee,
v.
Larry HOLLINS, Transportation Officer, Jackson County
Detention Center; James Higgs, Jackson County Department of
Corrections; Oscar Shelby, Jr., Jackson County Department
of Corrections; Defendants,
Robert Veltrop, Fulton Reception and Diagnostic Center,
Defendant-Appellant.
 No. 92-1739.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1992.
Decided Jan. 6, 1993.
Rehearing and Rehearing En Banc
Denied Feb. 15, 1993.
 
 June S. Doughty, Asst. Atty. Gen., Jefferson City, MO, argued, for appellant.
 Melinda Grace, Kansas City, MO, for appellee.
 Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 On December 18, 1988, Roger Buckner, following his conviction for first degree murder, was sentenced to life in prison without parole. Ten days after the sentence was imposed, Buckner was transported from the Jackson County Detention Center (JCDC), where he had already been incarcerated for more than 600 days, to the Fulton Reception and Diagnostic Center (FRDC). At some time before leaving JCDC, Buckner was involved in a physical altercation with Larry Hollins, an officer there. Hollins was one of four JCDC officers responsible for transporting Buckner and other inmates from JCDC to FRDC.
 
 
 2
 Robert Veltrop, an employee of FRDC, was working in the receiving unit when Buckner arrived. He claims to have known nothing of the prior altercation between Buckner and Hollins. Shortly after their arrival at JCDC, however, the delivering officers informed Veltrop that Buckner had been loud and abusive while being loaded on the van and that he allegedly had cursed and spit at Hollins. Apparently based upon this report, Veltrop directed the JCDC officers to place Buckner in a holding cell by himself rather than with other inmates. Also at the direction of Veltrop and apparently as part of the standard delivery procedure, the inmates from JCDC, including Buckner, were stripped of all clothing and restraints belonging to JCDC.
 
 
 3
 Veltrop was the only person with keys to Buckner's holding cell, and twice on December 28, 1988, prior to the event at issue, Veltrop admitted Hollins to Buckner's cell. Hollins was apparently admitted for the purpose of removing JCDC-issued clothing and other items in Buckner's possession. On a third occasion, Veltrop walked away after admitting Hollins to Buckner's cell. On this third admittance, Buckner alleges that Hollins stomped, kicked, and hit him. Buckner claims that he was kicked numerous times and hit in the jaw after the cell was opened and after he was placed in restraints. Buckner recalls having seen two other JCDC officers in the cell at some point during the altercation. He does not recall having seen Veltrop in the cell, although Veltrop, having the only set of keys, presumably opened it.
 
 
 4
 Veltrop states that when he became aware of the physical altercation between Buckner and Hollins, he opened Buckner's cell and observed Buckner being restrained and hand-cuffed, but not stomped or kicked. Veltrop does not dispute that two additional JCDC officers also entered the cell at some point during the incident.
 
 
 5
 At the time of the altercation between Buckner and Hollins, Veltrop had not yet received confirmation from the FRDC records office that the Missouri Department of Corrections had "accepted legal custody" of Buckner. This lack of confirmation, according to Veltrop, was the reason he did not intervene in the incident.
 
 
 6
 Buckner sued Hollins and other JCDC officers under 42 U.S.C. § 1983, claiming that their behavior violated his Eighth Amendment right to be free from cruel and unusual punishment. Buckner sued Veltrop under the same theory, asserting that Veltrop also violated the prisoner's Eighth Amendment right by failing to intervene when he saw Hollins beating Buckner. Veltrop moved for summary judgment on both the merits of the claim and on the basis of his asserted qualified immunity. The district court denied Veltrop's motion on both theories, and this is Veltrop's appeal from those rulings. We affirm.
 
 I.
 
 7
 We first consider whether Buckner's Section 1983 action against Veltrop can survive on the merits. We have discretion to consider this issue because the qualified immunity issue is being considered on interlocutory appeal. See Drake v. Scott, 812 F.2d 395, 399 (8th Cir.), modified on other grounds, 823 F.2d 239 (8th Cir.1987).
 
 
 8
 Appellant Veltrop asserts that he cannot be liable under Section 1983 because Buckner was not, at the time of the alleged assault, in Veltrop's lawful custody. Veltrop maintains that he had no duty nor authority to intervene in the incident between Buckner and Hollins. On this matter, Veltrop first asserts that he had been trained not to intervene in altercations involving inmates of whom FRDC had not taken custody, as this would be an improper exercise of control or jurisdiction of an inmate not yet legally under his department's control. Secondly, Veltrop argues that he had no supervisory responsibility over Hollins, a JCDC officer. Finally, Veltrop notes that he had no power of arrest because he is not and never has been a police officer.
 
 
 9
 The Eighth Amendment prohibits cruel and unusual punishment. It is well settled that, in the prison context, the amendment imposes various requirements on prison officials, including an obligation to restore control in tumultuous situations. See, e.g., Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Veltrop argues that, implicit in this rule, are the requirements that, at the relevant time, the plaintiff was a convicted prisoner and the defendant was his or her legal custodian. Although Veltrop maintains that the second criterion was not met in this case, the district court determined as a matter of law that Buckner was in the custody of both Jackson County and the Missouri Department of Corrections at the time of the incident. Furthermore, as the district court pointed out, "but for the actions [of] Veltrop ... Buckner and Hollins could not have had occasion to confront one another in an isolated holding cell." The district court considered crucial the fact that only Veltrop and no Jackson County personnel had keys to the cells at FRDC. On this issue of first impression, the district court determined that Veltrop had a duty to act on Buckner's behalf, even if "legal custody" had not yet been transferred.
 
 
 10
 On appeal, seeking to bolster his argument that he had no duty to intervene, Veltrop notes that under Missouri law the Division of Adult Institutions of the Department of Corrections is compelled to protect and care only for those persons "legally assigned to its jurisdiction." R.S.Mo. § 217.155. Furthermore, FRDC procedure indicates that the Department of Corrections "acquires statutory control over and jurisdiction of an inmate, only if appropriate sentence, judgment and commitment documents are delivered with the inmate...." FRDC Standard Operating Procedure 119.010(1).
 
 
 11
 We find Veltrop's construction of these provisions unconvincing, particularly given the reality of the situation. First, as to the Missouri statute's requirement of legal assignment, we note that Buckner had been legally assigned to FRDC, as part of the Missouri Department of Corrections, prior to the event that gave rise to this suit. Indeed, Buckner's assignment to the facility was the reason for his delivery to FRDC on the day the incident occurred. The Missouri statutes also provide that the "officer charged with the delivery of persons committed to the division for confinement ... shall deliver the person [to FRDC] and shall receive a certificate of delivery of the prisoner from [FRDC]." R.S.Mo. § 217.305. Accordingly, we find that Veltrop and FRDC may have been awaiting confirmation of delivery, but they were not at the relevant time awaiting confirmation of Buckner's commitment and FRDC's custody of Buckner.
 
 
 12
 Secondly, if Veltrop, an FRDC officer, had the only key to Buckner's cell, custody effectively had been transferred to FRDC. Veltrop controlled access to Buckner's cell, and he admitted Hollins. Given the practical reality of the situation, as well the indications of the relevant Missouri statutes, we find that the FRDC had custody (or at least joint custody) of Buckner, thereby triggering Veltrop's duty to intervene and to attempt to end Hollins's alleged assault on Buckner.
 
 
 13
 Having determined that Veltrop had a duty to intervene in the altercation between Buckner and Hollins, we next consider Veltrop's argument that the district court applied the wrong legal standard in determining whether Veltrop's behavior was actionable under a Section 1983 claim based on an Eighth Amendment violation. Specifically, Veltrop asserts that in order to prove Veltrop's violation of Buckner's Eighth Amendment rights, Buckner must establish that Veltrop's failure to intervene was "malicious and sadistic." See Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986), quoted in, Hudson v. McMillian, --- U.S. ----, ----, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Alternatively, Veltrop argues that the evidence fails to support even a finding of Veltrop's "deliberate indifference", the standard applied by the district court.
 
 
 14
 The district court applied the appropriate standard, namely "deliberate indifference" to an inmate's health and safety. This has been the test applied in numerous cases in which a prisoner claims injury (or aggravation of injury) due to a prison official's failure to act. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); Andrews v. Siegel, 929 F.2d 1326, 1330 (8th Cir.1991) (citing Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir.) cert. denied, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984)); Bailey v. Wood, 909 F.2d 1197, 1199 (8th Cir.1990); Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)). The Whitley/ Hudson standard proffered by Veltrop applies to cases in which a prison official is accused of using excessive force. In those cases, the inquiry is whether the force used was to maintain or restore discipline on the one hand, or whether it was "maliciously and sadistically [done] for the purpose of causing harm" on the other. Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1085 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.) cert. denied sub nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). While the Whitley/ Hudson standard might be applicable in assessing Veltrop's behavior had he intervened in the altercation and caused further injury to Buckner, it is not the appropriate one for determining Veltrop's liability for failing to intervene.
 
 
 15
 Even under the "deliberate indifference" test, Veltrop asserts that his behavior did not rise to that standard. In response to Veltrop's summary judgment motion on this point, Buckner must present "evidence on which the jury could reasonably find" for Buckner. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). More specifically, Buckner must show some evidence upon which a reasonable jury could conclude that Veltrop acted with deliberate indifference to Buckner's safety by failing to intervene in the altercation. In this case, Buckner has alleged that Veltrop failed to come to his aid when Buckner was being assaulted by JCDC officers. Buckner has presented evidence supporting his allegation that Veltrop's failure to assist him contributed to or exacerbated Buckner's physical injury, constituting the "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Veltrop's failure to intervene in order to stop Buckner's beating, particularly when Buckner was naked, hand-cuffed, and defenseless, would provide an ample basis for a jury to conclude that Veltrop acted with deliberate indifference and therefore violated Buckner's Eighth Amendment right.
 
 II.
 
 16
 A public official accused of violating the constitutional rights of others enjoys qualified immunity from liability for damages under 42 U.S.C. § 1983 if the official's conduct satisfies the standard of "objective reasonableness." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir.), cert. denied, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984).
 
 
 17
 Veltrop recites the standard Anderson-based argument for qualified immunity: a fact-specific inquiry is necessary and the law related to the situation confronting the public official must have been clear when he or she acted. See Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (right the official is said to have violated must have been "clearly established" in a more particularized, relevant sense). The argument is unavailing in this case. The Eighth Amendment right of an inmate to be free from cruel and unusual punishment is well established, as are (1) a prison official's duty to restore control in a tumultuous situation, see Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); (2) a prison official's Section 1983 liability for deliberate indifference to a prisoner's serious illness or injury, see Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); and (3) a prison official's Section 1983 liability for failure to protect a prisoner from foreseeable attack or otherwise to guarantee his or her safety. See Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984); Andrews v. Siegel, 929 F.2d 1326 (8th Cir.1991); Miller v. Solem, 728 F.2d 1020 (8th Cir.), cert. denied, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984).
 
 
 18
 The district court stated, as a conclusion of law, that "it was simply not reasonable for Veltrop to conclude that it would be proper to stand by and watch a cuffed and naked inmate be beaten on FRDC premises." We agree and affirm the district court's denial of summary judgment on grounds of qualified immunity.