850 F.Supp. 809 (1993)
Jeffrey DAVIS, Plaintiff,
v.
Francis SANCEGRAW, et al., Defendants.
No. 4:92CV919 GFG (CDP).
United States District Court, E.D. Missouri, E.D.
August 26, 1993.
*810 Jeffrey L. Davis, pro se.
Brian E. McGovern, McCarthy and Leonard, Chesterfield, MO, Paul M. Rauschenbach, Asst. Atty. Gen., St. Louis, MO, for defendants.

MEMORANDUM AND ORDER
PERRY, United States Magistrate Judge.
This matter is before the Court on defendants' motion for summary judgment and on plaintiff's motion for the appointment of counsel. This case was referred to the undersigned for trial and all other purposes with the consent of the parties pursuant to 28 U.S.C. § 636(c).
Plaintiff is presently incarcerated at the Potosi Correctional Center ("PCC") in Mineral Point, Missouri. He brings this pro se civil rights suit under 42 U.S.C. § 1983 against Francis Sancegraw (PCC Correctional Officer ("CO")), Phillip Nixon (PCC Sergeant), Beverly Howell, Captain Nicholas, Betty Webber (PCC Psychologist), R. Coleman, McPeak (PCC CO), Sergeant Salts, Lt. Reed, Blair (PCC CO), King (PCC CO), and Nurse Desiree alleging that they violated plaintiff's constitutional rights. Plaintiff specifically alleges that on or about March 11, 1992, defendant Sancegraw ordered plaintiff to cuff up and plaintiff refused, telling Sancegraw to go get a sergeant. Plaintiff was then rushed by a movement team, allegedly acting on the orders of defendant Nixon. Defendant Nixon allegedly told this movement team to bend plaintiff's arms and legs together to hurt plaintiff. Plaintiff further alleges that Sancegraw somehow lied to force the movement exercise and that Sancegraw had lied before in charging plaintiff with a conduct violation which was later expunged from plaintiff's record. Plaintiff further alleges that Sancegraw referred to plaintiff with a racial slur and that the movement team injured plaintiff's back, neck, legs, wrist, and ear by using excessive force. Plaintiff's final allegations are that despite his requests, he was never given an informal resolution request form by defendant Coleman to challenge the above actions and that his cell has been searched eight times in fifty days. All the defendants have answered and they have moved for summary judgment. Plaintiff has not responded to defendants' motion for summary judgment, and his time for doing so is long past.
As a preliminary matter, it is clear that plaintiff has failed to allege how defendants Howell, Nicholas, Webber, McPeak, Salts, Reed, Blair, King, or Desiree did anything to violate plaintiff's rights. Nowhere in his complaint does he allege specific acts on the part of those defendants which violated his constitutional rights. "Where a complaint *811 alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for the name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir.1974); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985) (claim not cognizable in § 1983 action when plaintiff does not allege that defendant was personally involved in, or directly responsible for, incidents that injured plaintiff.) Defendants' motion for summary judgment should therefore be granted as to all of these individuals. It is also apparent that plaintiff has named no individual as being responsible for the eight allegedly improper cell searches in fifty days. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin, 780 F.2d at 1338 (claim not cognizable under section 1983 where plaintiff fails to allege which defendant was personally involved in or directly responsible for the incidents that injured plaintiff). Defendants' motion for summary judgment should therefore be granted on this "improper cell search" claim as well.
This case thus boils down to five issues. First, was the March 11, 1992 movement exercise justified, or did Sancegraw somehow improperly initiate the exercise. Second, did defendant Nixon violate plaintiff's rights by allegedly telling the movement team to bend plaintiff in such a manner as to hurt him, or in otherwise compelling the movement team to use excessive force.[1] Third, were plaintiff's rights violated by Sancegraw's allegedly calling plaintiff a racial slur. Fourth, were plaintiff's due process rights violated when Sancegraw charged plaintiff with a conduct violation that was later expunged. The fifth and final issue is whether plaintiff's rights were violated by defendant Coleman's failure to provide plaintiff with an informal resolution request form.

Facts
The undersigned finds that the following facts are not disputed:
1. On March 11, 1992, defendant Sancegraw went to plaintiff's cell to retrieve plaintiff's food tray, but plaintiff refused to hand Sancegraw the tray. Sancegraw therefore left, but returned moments later, this time instructing plaintiff to submit to hand restraints so that a cell search could be conducted. Again plaintiff refused. Sancegraw repeated his order several times and each time plaintiff refused. Plaintiff then requested a sergeant (a supervising correctional officer). When the sergeant arrived plaintiff again was requested to submit to hand restraints, this time telling the correctional officers, "Fuck you, you will have to get a team before I will come out." (See Defts.Exh. B, "Use of Force" Report, and Davis Depo. at pp. 9-12, 14-16, 18).
2. Accordingly, a movement team was assembled and, at 2:11 p.m. on March 11, 1992, plaintiff was rushed. (Defts.Exh. B.) At 2:20 p.m. on that date plaintiff was evaluated by Nurse Desiree Skiles. She noted that plaintiff suffered no injuries, no scrapes, no cuts, and no bruises. She further noted that plaintiff moved all his extremities without difficulty and that plaintiff ambulated without difficulty. (Defts.Exh. F.)
3. Later on March 11, 1992, plaintiff filed a medical services request form complaining that he had pain in the back of his ear, in his neck, wrist, legs and back. Plaintiff was again evaluated by Nurse Skiles and, although she still noted no injuries, she ordered that plaintiff be x-rayed. (Defts.Exh. E.) Plaintiff refused to be x-rayed on March 20, 1992. (Defts.Exh. G.) On April 8, 1992, plaintiff submitted to cervical and thoracic spine x-rays. While the x-rays revealed mild anomalies, the overall appearance of plaintiff's spine was unchanged when compared with spinal x-rays taken December 21, 1991. (Defts.Exh. H.)

*812 Discussion

In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
The Supreme Court has noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327, 106 S.Ct. at 2554 (quoting Fed. R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'." Id. at 587, 106 S.Ct. at 1356. The Eighth Circuit has acknowledged that the "trilogy of recent Supreme Court opinions" demonstrates that the courts should be "more hospitable to summary judgments than in the past" and that a motion for summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988).
There is no genuine issue of material fact that on March 11, 1992 plaintiff repeatedly refused to submit to hand restraints. Plaintiff's allegation that Sancegraw's "lies" somehow precipitated the use of a movement team on that date therefore proves unfounded. Whatever interaction may have taken place between Sancegraw and plaintiff or between Sancegraw and other PCC officers became moot once Sergeant Nixon arrived at plaintiff's cell and gave him the opportunity to cuff up. When plaintiff refused the movement team went in. Defendants are therefore entitled to summary judgment on the first issue presented in this case, whether Sancegraw somehow improperly initiated the movement exercise on March 11, 1992.
The next issue is whether defendant Nixon acted improperly in allegedly telling the movement team to use excessive force. To whatever extent plaintiff may be seeking to hold Nixon liable under 42 U.S.C. § 1983 as a supervisor, plaintiff must demonstrate "that a superior had actual knowledge that his subordinates caused deprivations of constitutional rights and that he demonstrated deliberate indifference or `tacit authorization'" of the offensive acts by failing to take steps to remedy them. Pool v. Missouri Dep't of Corrections and Human Resources, 883 F.2d 640, 645 (8th Cir.1989) citing, Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir.1986). In addition, in order to hold a supervisor liable for his failure to supervise or control his subordinates, a plaintiff must also demonstrate a deliberate indifference to or a tacit authorization of the offensive acts. Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir.), cert. denied, 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989). In the absence of any such allegations, as is the case here, there is no basis upon which to hold defendant Nixon liable on a theory of supervisory liability.
The undersigned further finds that there is no genuine issue of material fact that the March 11, 1992 movement team did not act "maliciously and sadistically for the purpose of causing harm" to plaintiff. See Whitley v. *813 Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986). To whatever extent Nixon was a party to the movement exercise it therefore cannot be said that Nixon violated plaintiff's rights. Furthermore, to whatever extent plaintiff is alleging that Nixon failed to intervene to cut off excessive force, plaintiff's argument is first foreclosed by the fact that excessive force was not applied, but plaintiff's argument is also foreclosed by the fact that plaintiff has failed to establish that Nixon was "deliberately indifferent" to plaintiff's plight. See Buckner v. Hollins, 983 F.2d 119, 122-23 (8th Cir.1993). Plaintiff has provided no evidence in response to defendants' motion for summary judgment upon which a reasonable jury could rely in concluding that Nixon was deliberately indifferent. See id. Defendants' motion for summary judgment will therefore be granted on this issue.
The third issue is whether Sancegraw violated plaintiff's rights by calling plaintiff a "racial slur." Verbal insults or threats generally do not rise to the level of a constitutional violation. See Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir.1992). The only exception to this rule is when the verbal threat rises to the level of a "wanton act of cruelty" such that the inmate is in fear of "instant and unexpected death at the whim of his allegedly bigoted custodians." Burton v. Livingston, 791 F.2d 97, 99-100 (8th Cir. 1986). Plaintiff has not alleged that Sancegraw's comment approached this threshold. Defendants' motion for summary judgment will therefore be granted on this issue.
The next issue is whether plaintiff's rights were violated when Sancegraw allegedly improperly charged plaintiff with a conduct violation that was later expunged. The undersigned first notes that plaintiff has failed to explain in his complaint which of his many conduct violations is at issue. The failure to plead a claim with specificity can prove fatal to that claim. See, e.g., Martin, 780 F.2d at 1337. This issue must fail on the merits in any event, however. The fact that plaintiff ultimately had his record expunged of a charge is testimony to the fact that he received due process, rather than proof it was denied. The Eighth Circuit was confronted with a similar situation in Harper v. Lee, 938 F.2d 104, 105 (8th Cir.1991). In Harper a plaintiff suffered a conduct violation and requested certain exculpatory log books at a hearing. The logbooks were not produced and Harper was found guilty. After serving 15 days in disciplinary detention Harper was granted a rehearing at which time he was able to introduce the log books in evidence. Harper then filed a § 1983 action claiming he had been denied due process because he was not permitted to introduce the logbooks at the first hearing. The Eighth Circuit found that the administrative appeal process was part and parcel of the due process protection afforded prisoners. Id. Harper was therefore afforded all the process he was entitled to. The undersigned finds Harper dispositive of the issue at hand. The facts plaintiff alleges do not support a due process claim. Defendants' motion for summary judgment will therefore be granted on this issue.
The final issue is whether Coleman violated plaintiff's rights by failing to provide plaintiff with an informal resolution request form. This claim is non-cognizable in this § 1983 proceeding because an inmate grievance procedure is not constitutionally required. See United States ex rel Wolfish v. Levi, 439 F.Supp. 114, 163 (S.D.N.Y.1977), affirmed, 573 F.2d 118 (2d Cir.1978), reversed on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Accordingly, the alleged failure of Coleman to properly follow the state's grievance procedure does not give rise to a § 1983 claim. See Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo.1986), citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982). Defendants' motion for summary judgment will therefore be granted on this issue.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted.
IT IS FURTHER ORDERED, light of the above order, that plaintiff's motion for the appointment of counsel is denied.
NOTES
[1] Plaintiff has not identified the members of the movement team. Therefore, because § 1983 liability is personal, see, e.g., Madewell, 909 F.2d at 1208, plaintiff has pleaded only a supervisory liability theory with respect to his excessive force claim.