Robert CARICO, Plaintiff–Appellee.

v.

BENTON, IRELAND, AND STOVALL, Defendants–Appellants.

No. 02–1340.

United States Court of Appeals, Sixth Circuit.

June 26, 2003.

BEFORE: BATCHELDER, and MOORE, Circuit Judges; and FORESTER, District Judge.*

FORESTER, District Judge.

Defendants Keith Benton, James Ireland, and Clarice Stovall appeal the district court's denial of their motion for summary judgment asserting qualified immunity. For the following reasons, we REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellee brought a civil rights action under 42 U.S.C. § 1983 for an alleged physical assault he received while incarcerated at the Western Wayne Correctional Facility ("WCF") in the State of Michigan. The complaint seeks declaratory, compensatory, as well as punitive damages, and originally named four additional defendants (Joe Wickens, Richard Stock, Bill Martin and Christopher Minnifield) who are not a part of this appeal.[1] Defendants Benton and Ireland are corrections officers at WCF, while Defendant Stovall is the warden.

Although the appellants contest the validity of Carico's allegations, for purposes of deciding the question of qualified immunity, both parties accept the version of events described in Carico's deposition. The events relevant to the lawsuit arose from Carico's incarceration for driving un-

---

* The Honorable Karl S. Forester, Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

1. Wickens, Stock and Martin are corrections officials who were dismissed by stipulation. Minnifield is the former corrections officer alleged to have assaulted the plaintiff by striking him in the eye. Minnifield takes no part in the present appeal, and has apparently not participated in the district court proceedings. Accordingly, the Court's decision does not apply to any potential qualified immunity defense asserted by Minnifield.

der the influence of alcohol. After being housed in a county jail for several months, the state transferred Carico to WCF along with five or six other prisoners. While Carico and the other prisoners awaited processing outside the intake room, one prisoner made a "smart remark" to a female officer. Minnifield, the processing officer at the time, came out of the intake room and started yelling at the wrong prisoner for making the comment. Carico pointed out to Minnifield that the person he was yelling at was not the prisoner who had made the remark, which prompted Minnifield to start yelling at Carico.

A few minutes later, when it was Carico's turn to be processed, Minnifield said he wanted to know who made the comment. After Carico refused to tell him who actually made the comment, Minnifield "got screaming mad" at Carico and apparently made so much noise that Officers Benton and Ireland came down to the intake room and stood outside the doorway. At this point, Officer Benton came into the office and called Carico a "snitch" which prompted Carico to call Officer Benton a "snitch" as he turned his back to walk out of the intake office. This name calling led to Minnifield getting out of his chair, walking over in front of Carico and shaking his fists "like in a rage." After standing in front of Carico for a few seconds, Minnifield opened his hand and smacked Carico "right in the eye" with his right palm. At this moment, Officers Benton and Ireland were outside the doorway watching the events inside the office. Minnifield then grabbed Carico's wrists and tried to pull him out of his chair, causing Benton and Ireland to come in and start pulling on Minnifield to get him off Carico. As Benton and Ireland pulled on Minnifield, Minnifield pulled Carico out of his chair. After a small struggle, Benton and Ireland were able to get Minnifield separated from Carico. Carico admits

Benton and Ireland were attempting to remove Minnifield "after he hit me."

Following the incident, the officers cited Carico for a major misconduct violation and placed him in segregation until a hearing was held, whereupon he was found guilty of threatening behavior. After a rehearing was denied, Carico contacted several agencies and individuals in an attempt to have the threatening behavior determination reviewed. Apparently, no administrative review of the misconduct violation occurred; and, although Carico argues that all the officers conspired to cover-up what actually happened, the finding of guilt was never overturned.

After Carico filed his complaint, the appellants moved for a dismissal and summary judgment, raising qualified immunity as a defense. The magistrate judge omitted consideration of qualified immunity, and instead recommended dismissing the complaint on the merits by granting summary judgment on two separate grounds. First, the magistrate judge concluded that the favorable termination requirement of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). demanded such a result as to Benton and Ireland because plaintiff's claim was based on an allegation that corrections officers falsified a misconduct report. However, the district court disagreed and distinguished this claim because it was not "founded solely on an allegation that a corrections officer falsified misconduct reports." Second, the magistrate judge found that the evidence against defendants was insufficient to establish liability under § 1983. The district court also rejected this conclusion and held that the court should not consider summary judgment until after the close of discovery. The district court likewise failed to address the qualified immunity defense asserted by the defendants as the basis for summary judgment.

After answering the complaint by asserting affirmative defenses and then responding to extensive discovery, the appellants once again filed a motion seeking summary judgment on the basis of qualified immunity. This time, citing the district court's policy of not considering motions for summary judgment until after discovery, the magistrate judge recommended denying the motion. The district court adopted the report and recommendation of the magistrate judge. The district court also denied appellants' motion to stay discovery. In a motion to reconsider the discovery order, the appellants argued that the question of qualified immunity must be addressed before the taking of additional discovery. The district court denied the motion for reconsideration and finally addressed qualified immunity. In its order, the court held:

> The crux of Defendants' argument is that this Court should resolve the threshold question of qualified immunity before allowing discovery. It is clear, however, that qualified immunity does not bar Plaintiff's suit. The essence of Plaintiff's complaint is that a state actor physically assaulted him for no legitimate reason, and that other state actors implicated themselves in that assault. Qualified immunity does not bar such an action. *See Williams v. Belknap*, 154 F.Supp.2d 1069, 1073–74 (E.D.Mich.2001)(Gadola, J.). Accordingly, this Court holds that Defendants are not entitled to qualified immunity.

The appellants timely filed a notice of appeal from the district court's denial of summary judgment based on the defense of qualified immunity.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Jurisdiction and Standard of Review

■ Defendants argue that the district court erred in denying their motion for summary judgment based upon the defense of qualified immunity. This court has jurisdiction to review the district court's denial of summary judgment because it is an appealable decision pursuant to the Supreme Court's decisions in *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) and *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).[2] We review the district court's grant of summary judgment *de novo*, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (*en banc*). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

**2.** In *Johnson,* the Court held that a denial of summary judgment in a qualified immunity case that determines only a question of the sufficiency of evidence is not appealable as a final decision. *See Johnson,* 515 U.S. at 313. However, the Court acknowledged in *Behrens* that this conclusion does not mean that every denial of summary judgment is not appealable. *See Behrens,* 516 U.S. at 313. Instead, summary judgment determinations are appealable when they resolve disputes concerning abstract issues of law relating to qualified immunity. *See Johnson,* 515 U.S. at 317. This

Court has concluded that "the issue of whether qualified immunity is applicable to an official's [undisputed] actions is a question of law," and therefore a review of the district court's denial of summary judgment on the basis of qualified immunity—when the defendant concedes the facts as alleged by the plaintiff—is an appealable decision. *Chappel v. Montgomery County Fire Prot. Dist. No. 1,* 131 F.3d 564, 573 (6th Cir.1997) (internal quotations and citations omitted); *see also Sheets v. Mullins,* 287 F.3d 581, 585 (6th Cir.2002).

law." Fed.R.Civ.P. 56(c). When we review a motion for summary judgment, we view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand summary judgment, the nonmovant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Additionally, this Court conducts *de novo* review of the district court's denial of a defendant's motion for summary judgment on the basis of qualified immunity in this context.[3] *See Chappel*, 131 F.3d 564, 573.

## B. Qualified Immunity

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). Therefore, in order to withstand a motion for summary judgment based on the defense of qualified immunity the plaintiff must first show from the facts alleged that the government official "violated a clearly established statutory or constitutional right." *Id.*

A court in this circuit undertaking a qualified immunity analysis must first determine whether the plaintiff has shown a violation of a constitutionally protected right; if so, the court must examine whether the right was clearly established. *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir.1996). The right allegedly violated cannot be asserted at a high level of generality, but instead, "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To overcome qualified immunity, the right allegedly violated must be so clear that any reasonable public official in the defendant's position would understand that his conduct violated the right: "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). If the plaintiff is unable to show the violation of a constitutionally protected right, then obviously it is unnecessary for the Court to proceed to the second step of the qualified immunity analysis. *See Brennan*, 78 F.3d at 1154.

We have established that there are two ways in which a plaintiff seeking to overcome the bar of qualified immunity can show that a right was clearly established in the law at the time the alleged violation occurred. First, "a district court within this circuit must be able to 'find binding

---

**3.** *See supra*, n. 3 (finding that the denial of the motion for summary judgment in this action on qualified immunity is appealable).

precedent from the Supreme Court, the Sixth Circuit, or ... itself'" that directly establishes the conduct in question as a violation of the plaintiff's rights. *Summar v. Bennett,* 157 F.3d 1054, 1058 (6th Cir. 1998) (citations omitted). If no binding precedent is "directly on point," the court may still find a clearly established right if it can discern a generally applicable principle from either binding or persuasive authorities whose "specific application to the relevant controversy" is "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id.; accord Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

The district court's denial of qualified immunity lacks any extensive discussion.[4] In the event denial of summary judgment based on qualified immunity involves a legal question, a court of appeals may "take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Johnson,* 515 U.S. at 319. In contrast, if the district court does not state the facts that form the basis of its decision to deny qualified immunity, the appellate court must undertake the "cumbersome review of the record to determine what facts the district court, in the light most favorable to the non-moving party, likely assumed." *Id.* Here, the district court failed to state what specific acts violated Carico's constitutional rights and merely stated that the officers "implicated themselves" in the assault, summarily concluding that qualified immunity is inapplicable. Accordingly, this Court must review the record in light of the district court's decision to determine if it properly denied the defendants' motion for summary judgment on the basis of

qualified immunity. Consistent with *Johnson,* the facts as the plaintiff presents them must be examined to determine, as a matter of law, whether each of the defendants are entitled to qualified immunity.

### 1. Officers Benton & Ireland

Carico brings his claim against Benton and Ireland under the Eighth Amendment, arguing the officers violated his right to be free from cruel and unusual punishment. To determine whether officers Benton and Ireland violated Carico's rights under the Eighth Amendment, it is important to classify the nature of the Eighth Amendment claim, and to distinguish the actions of Minnifield, a defendant not a party to this appeal. Carico can clearly claim excessive force against Minnifield for the slap to the face; however, he does not allege Benton and Ireland used excessive force against him, but rather that they failed to protect him from Minnifield. Accordingly, the appellant's actual claim against Benton and Ireland is properly characterized as a "failure to protect" claim rather than a claim for excessive force.

In *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court discussed prison officials' duty under the Eighth Amendment to protect prisoners and provide humane conditions of confinement. *Id.* at 832–33. Under its analysis, the court held:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial

---

**4.** The district court's cite to its own earlier opinion, *Williams v. Belknap,* 154 F.Supp.2d 1069 (E.D.Mich.2001), provides little guidance. *Williams* says nothing more than the

fact that evidence supporting excessive force defeats qualified immunity. *Id.* at 1073–74. In the present case, it is undisputed that none of the appellants used any type of force.

risk of serious harm exists, and he must also draw the inference. *Id.* at 837. The Court continued by emphasizing "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Finally, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845.

Carico makes two specific claims for liability against Benton and Ireland: (1) the officers were present at the assault and "did nothing to intervene" and (2) they conspired to cover-up the assault. Carico cites several cases to support his assertion that the officers violated his Eighth Amendment rights by failing to intervene; however, two cases in particular illuminate the issues and analysis necessary for resolution of this action and merit discussion. In *Buckner v. Hollins*, 983 F.2d 119 (8th Cir.1993), the Eighth Circuit held that a prison official was not entitled to qualified immunity when he allowed fellow corrections officers to attack a prisoner and he possessed the only set of keys to the prisoner's holding cell. *Id.* at 121. The prison official in *Buckner* let other officers into the prisoner's cell and witnessed an attack on the prisoner. Emphasizing the fact specific nature of the inquiry, the court concluded the official could be found liable because he deliberately ignored a prisoner's serious injury and failed to protect the prisoner from a foreseeable attack or otherwise guarantee the prisoner's safety. *Id.* at 122–23. The court concluded the officer had a duty to intervene. *Id.*

In *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir.1990), a panel in this circuit found a prison official has "a duty to try and stop another officer who summarily punishes a person in the first officer's presence." *Id.* at 188. Accordingly, in the prison context,

a "correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating." *Id.* (citations omitted). The specific facts of *McHenry*, as described by the panel, are important to the court's holding:

McHenry arrived at Brushy Mountain Prison on September 17, 1987, to begin serving a nine-year sentence for convictions on three counts of second degree burglary and three counts of petit larceny. On Friday, October 16, 1987, defendant guard Don Daugherty, Jr., removed McHenry from his cell on the representation that he was going to be taken to the prison auditorium. Instead, he was escorted to the desk of defendant Corporal Sam Chadwick; in addition to Daugherty and Chadwick, defendant guards Keith Hamby, Bruce Hensley, and a Corporal Williams were present ... After ordering another inmate to leave the area, Corporal Chadwick accused McHenry of threatening the life of another inmate, stealing from another, and causing both to "check in" to voluntary administrative segregation or protective custody. However, contrary to prison policy, the defendants did not conduct an investigation to verify the incidents. Nevertheless, despite McHenry's denial that the events took place, the defendants used vulgarities, twisted his arm, and threw him to the ground. At this point, Corporal Chadwick taunted McHenry and stated: "Why don't you hit me?" After continued taunting and name calling, McHenry was escorted back to his cell by defendant Don Daugherty, Jr. Later that day, McHenry filed a grievance regarding this treatment.

At about 8:00 a.m. the next morning, October 17, 1987, defendant Don Daugherty, Jr. arrived at McHenry's cell and escorted him to the prison hospital;

McHenry had not requested to go there. Present at the hospital were Don Daugherty, Jr., Sam Chadwick, Lonnie Daugherty, Jim Young, Bruce Hensley and Keith Hamby. Once at the hospital, McHenry was escorted to the rear of the hospital to a holding cell by defendant Jim Young; the remaining officers followed a few steps behind. While putting on leather gloves, Young asked McHenry if he had experienced any trouble with any officers the day before. After McHenry responded that he had not, Young struck McHenry with a blow to the upper back. With the blow, McHenry fell to the floor and hit his head against the wall. The remaining officers rushed into the holding cell and proceeded to strike McHenry in the back, stomach, and legs; including Lonnie Daugherty who struck McHenry's leg with a billy club. Defendant Hamby then picked McHenry up off the floor by his shirt and told him that "we better not have anybody else checking in because of you." Following this incident, McHenry was taken to the nurse who gave him one tablet of Motrin and an ice pack for his pain. McHenry filed a second grievance with prison officials later that day.

*Id.* at 186 (footnote omitted).

The officials in *McHenry* asserted that they could not be liable for the first "shove" because it was only one act that they could not have anticipated or stopped. The court rejected that argument because the surrounding circumstances, including lying about where they were taking the prisoner and telling another prisoner to leave the area so there would be no witnesses, were sufficient for a jury to find that the officers knew the attack was imminent. *Id.* at 188. Further, the claim

encompassed the attack the following day and the combined events were sufficient for a jury to conclude that all the officials present at each event breached their duty. *Id.*

In contrast, although *Buckner* and *McHenry* support Carico's contention that the officers had a duty to intervene in the present case, they do not support Carico's position that the officers breached their duty by failing to intervene. Instead of providing an opportunity for the attack and doing nothing (as did the officers in *Buckner*) or standing idly by while a known attack took place without intervening (as in *McHenry*), officers Benton and Ireland only observed one act of physical violence before proactively intervening and removing Minnifield from Carico. The facts as asserted by Carico do not reveal that the officers should have been aware of the reasonable likelihood of a potential attack and intervened earlier.[5] Based upon the record set forth by the appellant, Benton and Ireland acted reasonably by immediately intervening when Minnifield attacked Carico, and therefore "cannot be found liable under the Cruel and Unusual Punishment Clause." *Farmer*, 511 U.S. at 845.

Turning to Carico's second claim, namely, that the officers conspired to cover up the assault. the magistrate judge recommended dismissing this claim under the "favorable termination" requirement of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, the Court held:

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would ren-

---

5. A contrary holding would impose a duty upon officers both unrealistic and foreign to the law: that of intervening or facing a "failure to protect claim" any time another officer yells at an incarcerated individual.

der a conviction or sentence invalid ... a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87 (footnote omitted).

In *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended this requirement to prisoner allegations of due process violations in discipline hearings. *Id.* at 648. Moreover, this Court, in *Huey v. Stine,* 230 F.3d 226 (6th Cir.2000), held that if a claim is founded solely on an allegation that a correctional officer falsified a misconduct report, *Heck* and its favorable termination requirement would apply. *Id.* at 230–31.

The district court rejected the magistrate judge's recommendation to dismiss the case, concluding that the facts are not analogous to *Huey* because Carico's claim "primarily rests on the allegation that those Defendants wrongfully failed to protect him from the alleged assault by Defendant Minnifield." Additionally, the court concluded that Carico could prevail without having the results of his disciplinary proceeding invalidated because the defendants could have used excessive force against Carico even though Carico may have violated disciplinary rules. In both instances, the district court's analysis is improperly focused upon the actual assault and not the conspiracy and discipline proceeding that form the crux of Carico's second claim against Benton and Ireland. Although *Heck* and *Huey* may be inapplicable to Carico's first claim, both holdings apply to the second claim and therefore preclude any action for this "conspiracy to cover up the assault" because the state agency decision has not been invalidated.

Contrary to the district court's opinion, Carico does base a significant part of his claims on the conspiracy and clearly argues the point in his brief. We agree with the appellants that any "excessive force" exception to *Heck* would only apply to Minnifield and does not result in imposing liability on Benton and Ireland.

Accordingly, as to Benton and Ireland, we hold that their actions are covered by qualified immunity. Although Carico has a constitutional right to be free from cruel and unusual punishment, Benton and Ireland did not breach their duty to Carico under the Eighth Amendment by failing to intervene and prevent significant injury. Moreover, any claim that the officers falsified a disciplinary report is excluded by the favorable termination rule.

### 2. Warden Stovall

Carico's claim against Warden Stovall is based upon supervisory liability in that he alleges that Stovall not only condoned the assault but "encouraged it by not taking appropriate actions to curtail it." In essence, Carico argues that prior unsubstantiated claims of abuse by Minnifield gave sufficient notice to Stovall that her failure to remove Minnifield from intake constituted a breach of the Eighth Amendment because she knew of a substantial risk of harm. However, respondeat superior or supervisory liability is not a theory of liability in a § 1983 action. *Monell v. Dep't of Soc. Serv. of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A supervisor may be liable only on the basis of her own acts or omissions. As this court held in *Bass v. Robinson,* 167 F.3d 1041 (6th Cir.1999):

Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead, the liability must be based upon active unconstitutional behavior. Liabil-

ity under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence.

*Id.* at 1048 (internal citations omitted).

Nothing in Carico's allegations or arguments goes beyond his claims that Stovall breached her duty because she failed to act. There is no indication that Stovall had any idea this attack was going to take place or knew of the attack when it happened. It does not seem unreasonable for Stovall, as warden, to have Minnifield in the processing department when this attack took place. The only "evidence" provided by Carico was an incident that occurred after his alleged confrontation with Minnifield. As the magistrate judge detailed in his original report and recommendation: "It is worth noting that with the exception of one of the alleged assaults (in which the prisoner was about to have a parole hearing and did not want to get involved, and apparently never filed a grievance) the incidents all happened after the incident involving Plaintiff." Under the standards and precedent of the Supreme Court and this Circuit, qualified immunity applies to Stovall in her role as warden of WCF because there was no active unconstitutional behavior. *Bass,* 167 F.3d at 1048.

In conclusion, we find that qualified immunity covers the conduct of all three defendants/appellants. Accordingly, the defendants'/appellants' motion for summary judgment should have been granted.

### III. PLAINTIFF'S ABUSE OF DISCRETION CLAIMS

Carico argues that the district court abused its discretion when it (1) limited discovery and (2) when it denied him counsel. Nothing in the joint appendix or the lower court's opinion addressed these issues. According to the appellants, Carico filed what he termed "a cross appeal" after the appellants initiated this appeal. The Clerk docketed those claims as a separate appeal under the number 02–1645. A case manager sent Carico a letter indicating that he had not responded to a deficiency order and that failure to resolve a fee matter would result in the appeal being dismissed. According to the docket sheet, a panel of this Court composed of Judges Boggs, Clay and Gilman filed an order dismissing the case for lack of jurisdiction on June 25, 2002. Accordingly, these issues are not properly before this court.

### IV. CONCLUSION

Based upon the above, we REVERSE the district court's denial of defendants'/appellants' motion for summary judgment and REMAND with instructions for the district court to enter summary judgment in favor of defendants Benton, Ireland, and Stovall.

MOORE, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion. According to Carico, whose view of the facts is not disputed by defendants for purposes of this summary judgment motion, Minnifield approached Carico with clenched fists and stood over Carico shaking his fists for a number of seconds before he struck Carico in the right eye. Minnifield then grabbed Carico's wrists in an attempt to pull Carico from his chair. Ireland and Benton were in the doorway during this altercation, only approximately four feet away, yet they did not act until the chair tussle. Surely if Minnifield had waved a knife over Carico before actually hitting him, Benton and Ireland could not stand by idly, but they would instead have had a duty to intervene. The fact that Minnifield shook his fists over Carico rather than waved a knife over him does not eliminate Benton and Ireland's duty to intervene to prevent harm to Carico.

They were aware of a substantial risk of serious harm to Carico; their intervention was too little and too late. Qualified immunity is inappropriate with respect to the claim against Benton and Ireland for their failure to intervene. Because this claim is distinct from any claim of falsification of a misconduct report, it is not barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), or its progeny.