**Robert W. STARBECK, Plaintiff,**

v.

**LINN COUNTY JAIL, and Jan Dolley (RN), et al., Defendants.**

**No. C91–0091.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

Dec. 12, 1994.

Jeffrey M. Lipman and Brent C. Bedwell of the Lipman Law Firm, Des Moines, IA, for plaintiff Robert W. Starbeck.

William A. Hill, Asst. Atty. Gen., Des Moines, IA, for defendants Thalacker, Kula, and Fear.

Gary P. Jarvis, Asst. County Atty., Cedar Rapids, IA, for defendants Dolley and Zeller.

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ............................... 1133

II. FINDINGS OF FACT ............................................ 1133
 A. Undisputed Facts .................................................. 1133
 B. Contested Facts ............................................... 1137

III. CONCLUSIONS OF LAW .......................................... 1137
 A. Standards for Summary Judgment .................................. 1137
 B. An Overview of the Eighth Amendment ............................. 1139
 C. Deliberate Indifference to a Serious Medical Need .................. 1140
 1. Introduction ............................................. 1140
 2. Deliberate Indifference—The Objection and Subjective Components 1140
 a. Introduction ........................................... 1140
 b. The Objective Component .................................. 1141
 c. The Subjective Component ................................. 1143
 D. Analysis of Indifference Claims ................................. 1145
 1. Serious Medical Condition ................................ 1145
 2. Defendants Dolley and Zeller ............................. 1146
 3. Defendants Thalacker and Kula ............................ 1146
 E. Defendant Fears Use of Restraints ............................... 1147

IV. CONCLUSION ................................................... 1149

Plaintiff, Robert W. Starbeck is a former inmate at the Iowa Mens Reformatory ("IMR") in Anamosa, Iowa, and the Linn County Correctional Center ("the Correctional Center") in Cedar Rapids, Iowa. Starbeck suffers from back problems and chronic Hepatitis C. In this 42 U.S.C. § 1983 litigation, Starbeck asserts that the failure of the Defendants to permit corrective surgery on his back as recommended by consulting physicians in Minnesota constitutes deliberate indifference to his serious medical needs and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment. Starbeck further asserts that Defendants at IMR failed to provide him with soft soled shoes as recommended by consulting physicians. Starbeck also alleges that the use of a "black box" while transporting him for medical care constituted an excessive use of force in violation of the Eighth Amendment. The Defendants are three employees of IMR, the administrator of the Correctional Center and a nurse at the Correctional Center who provides medical care to inmates at the Correctional Center.

## I. INTRODUCTION AND BACK-GROUND

On April 10, 1991, Starbeck filed a *pro se* complaint against Defendants. On the same date, Chief Magistrate Judge John A. Jarvey issued an initial review order granting Starbeck permission to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(d). Judge Jarvey subsequently granted Starbeck's request for the appointment of counsel. Counsel subsequently appeared on behalf of Starbeck. After the parties had engaged in discovery, the Defendants brought various dispositive motions.

On July 30, 1993, Judge Michael J. Melloy granted that portion of Defendants Jan Dolley and Donald Zeller's motion for summary judgment concerning an allegation that they caused Starbeck to contract hepatitis C, but denied the segment of their motion for summary judgment related to allegations in the complaint that they showed deliberate indif-

ference to Starbeck's serious medical needs. On the same date Judge Melloy also granted Defendants' motion to dismiss the complaints against Defendants Christopher Meeks, Greg Orts, Steve Hebron, Bess Tapper, and Darrell DeBoom. Judge Melloy, however, denied that portion of Defendants' motion to dismiss related to allegations in the complaint that Defendants Jan Kula and John Thalacker were deliberately indifferent to Starbeck's medical needs. Judge Melloy also denied that portion of the motion to dismiss that part of the complaint which contained allegations that Defendant Dennis Fear had violated the Eighth Amendment's prohibition on the infliction of cruel and unusual punishment by the manner in which he had been handcuffed. Judge Melloy dismissed all other allegations against Defendant Thalacker. Finally, on July 30, 1993, Judge Melloy granted Defendants Scott Petersen and the Linn County Correctional Facility's unresisted motion to dismiss for failure to state a cause of action.

Defendants Thalacker, Kula, and Fear have now moved for summary judgment on the remaining claims against them: that Defendants Kula and Thalacker violated Starbeck's Eighth Amendment rights by being deliberately indifferent to his medical needs, and that Defendant Fear violated the Eighth Amendment by the manner in which he handcuffed Starbeck. Defendants Jan Dolley and Donald Zeller have also moved for summary judgment in a separate motion on Starbeck's claims that they were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

## II. FINDINGS OF FACT

### A. Undisputed Facts

For the purpose of this summary judgment motion only, the court finds the following facts:

1. On July 13, 1989, Starbeck injured his back in a work related accident. Plaintiff was seen by Dr. Hadley.

2. On July 27, 1989, a CAT scan performed by Dr. Dominic Korbuly confirmed the injury to Starbeck's back. The scan revealed a herniated disc.

3. In September 1989, Starbeck became incarcerated at the Dakota County Correctional Facility in Minnesota. He was examined there by a facilities physician who referred Starbeck to an orthopedic surgeon, Dr. deSouza. Dr. deSouza recommended that Starbeck have corrective surgery, a decompression laminectomy with fusion.

4. On October 26, 1989, a second CAT scan was performed on Starbeck, and Starbeck sought a third opinion from Dr. John Dowdle. Dr. Dowdle concurred with his colleagues' diagnoses and treatment recommendations; that Starbeck suffered from a herniated disc in his back and that he have corrective surgery.

5. In February of 1990, Starbeck was transferred to the Correctional Center. Starbeck was charged with possession of a controlled substance. Starbeck was a resident of the Correctional Center from February 20, 1990 through May 4, 1990. Starbeck was then transferred to the Iowa Medical and Classification Center. On June 15, 1990, Starbeck was transferred to IMR.

6. Defendant Jan Dolley is a licensed registered nurse and is employed at the Correctional Center. Defendant Donald Zeller was the administrator of the Correctional Center during the time Starbeck was detained there.

7. Dolley saw Starbeck on February 20, 1990, in connection with his admission to the Correctional Center. On that date she obtained information concerning his medical condition and medical history.

8. On February 23, 1990, Dolley saw Starbeck after he complained of lower back pain. After conducting an examination, Dolley called Dr. Mark Pospisil to discuss Starbeck's condition. Starbeck obtained a prescription for Motrin 800 for his back pain and for antacid for stomach problems he was experiencing.

9. On February 26, 1990, Dolley saw Starbeck concerning his complaint of cold symptoms and his request for a change in back pain medication. Starbeck was given some cold medicine. Dolley checked with Dr. Pospisil regarding changing Starbeck's back pain medications, and on February 27, 1990, Starbeck's back pain medication was changed to Disalicid 750 mg.

10. On March 6, 1990, Dolley again saw Starbeck for chronic back pain and a cold. Starbeck requested additional cold medication and pain medication. Dooley concluded that Starbeck was ambulatory and not in acute distress. She provided Starbeck with back exercises he could perform.

11. On March 8, 1990, Starbeck was seen by Dr. Popsisil concerning back problems and headaches. Starbeck informed Dr. Popsisil that he had a herniated disc which required surgery. Dr. Popsisil changed Starbeck's prescription to Tegretol.

12. On March 13, 1990, Dr. Popsisil ordered liver function studies to be conducted on Starbeck. On March 14, 1990, Dr. Popsisil ordered a chemistry profile of Starbeck's blood. Dolley arranged for these tests to be performed.

13. During this time period Starbeck was being represented by Minnesota attorney Linda E. Museus on his workers' compensation claim.

14. Museus gave Starbeck a letter dated March 19, 1990, and addressed to "Whom it May Concern", in which she notes that it has been recommended that Starbeck receive surgery and that he be allowed to have surgery performed by his treating physician in Minnesota.

15. On April 19, 1990, Assistant Linn County Attorney Scott C. Peterson responded by letter to Museus' letter of March 19th. In his reply, Peterson states in part that:

we intend to fulfill our obligation to provide Mr. Starbeck with adequate and necessary medical treatment while he is incarcerated at the Linn County Correctional Center. He is being treated for, among other things, back and leg pain, but surgery is not necessary at this time, according to medical personnel.

Should surgery be determined necessary at a later time, it would be accomplished here, not in Minnesota, in accordance with

our aforementioned obligation to provide medical treatment.

16. At some point in late spring of 1990, Museus also had a telephone conversation with a Sergeant Zeller at the Correctional Center concerning Starbeck's need for back surgery. She informed Sgt. Zeller that a workers' compensation insurer would pay for the surgery and that Starbeck's doctors had recommended the surgery. Museus was informed by Sgt. Zeller that no surgery would be performed on Starbeck unless he had a condition which was life threatening because such surgery would necessitate that Starbeck be under a 24–hour guard during his recovery, and the State of Iowa would not pay for such guard service.

17. On March 20, 1990, Dr. Popsisil saw Starbeck and reviewed the results of the liver function tests with him. The tests showed marked elevations of all cellular functions, but was negative as to hepatitis. Starbeck informed Dr. Popsisil that he had had yellow sclera six months earlier. Based on this information Dr. Popsisil ordered that the blood work and hepatitis tests be repeated.

18. Dr. Popsisil saw Starbeck on March 22, 1990. He observed during his examination that Starbeck's back was essentially nontender and that his reflexes, strength and gait were all normal. Later on March 22, 1990, Dr. Popsisil received a phone call from Dolley. She reported that Starbeck continued to complain about back pain. Dr. Popsisil prescribed bed rest for Starbeck in the infirmary.

19. On March 27, 1990, Dr. Popsisil saw Starbeck again. Dr. Popsisil observed that Starbeck's condition had improved. Starbeck, however, continued to report intermittent left leg pain. The liver test showed that Starbeck still had elevated cellular enzymes. The test results were negative for surface antigens, core antibodies and the hepatitis A virus. Dr. Popsisil recommended that Starbeck's activities be increased with the goal of having him released from the infirmary. Dr. Popsisil also ordered that another liver function test be conducted in a week.

20. On April 3, 1990, Dolley took a sample of Starbeck's blood in order to run tests ordered by Dr. Popsisil.

21. On April 10, 1990, Starbeck was seen by Dr. Popsisil. The results of Starbeck's blood work showed signs of improvement. The hepatitis panel showed no abnormalities. Based on the test results obtained, Dr. Popsisil was of the opinion that Starbeck suffered from an undiagnosed liver disorder, and that he needed further evaluation by a gastroenterologist and anesthesiologist regarding the advisability of Starbeck undergoing general anesthesia before back surgery could be contemplated. Dr. Popsisil was of the opinion that Starbeck was not a good candidate for surgery until his liver disorder was diagnosed.

22. On April 24, 1990, Dr. Popsisil saw Starbeck concerning breathing and allergy problems. Dr. Popsisil prescribed an inhaler, and substituted Ergostate for Starbeck's prescription of Tegretol.

23. On April 27, 1990, Starbeck was seen by Dolley for an anxiety attack. Dolley gave him medication for the attack.

24. On April 30, 1990, Starbeck had another blood test for a chemistry profile. The results of the test showed improvement.

25. On May 1, 1990, Dr. Popsisil saw Starbeck and continued his medication for anxiety, Atarax, and granted Starbeck's request for AlkaSeltzer Plus cold medication.

26. On May 4, 1990, Starbeck was transferred to the Iowa state correctional system to serve his sentence.

27. Dr. Popsisil is of the opinion that Starbeck's back pain improved during his course of treatment. Dr. Popsisil is further of the opinion that, because of Starbeck's undiagnosed liver problems, further evaluation was needed before he could receive the general anesthesia required for back surgery.

28. During Starbeck's incarceration at the Correctional Center his pre-incarceration medical records were not reviewed by the Correctional Center's staff or Dr. Popsisil.

29. Defendant John Thalacker is the Warden at IMR. Defendant Jen Kula is a

former nurse at IMR and Defendant Dennis Fear is a correctional officer at IMR.

30. On May 4, 1990, Starbeck was received at the Iowa Medical and Classification Center ("IMCC") in Oakdale, Iowa. On that date he was seen by medical staff at IMCC to review his medical history.

31. On May 8, 1990, Starbeck was seen by the medical staff regarding his back condition. Starbeck was placed on a restricted work status and his medical records were ordered.

32. On either May 17 or May 18, 1990, Museus contacted Rusty Rogerson at IMCC and informed him of Starbeck's past medical records and his need for surgery. Rogerson requested that Museus send him Starbeck's past medical records. Museus complied with Rogerson's request and sent Starbeck's medical records. These records included the recommendations of three doctors that Starbeck have back surgery.

33. An appointment was made for Starbeck to be seen at the University of Iowa Hospitals and Clinics' Spinal Diagnosis and Treatment Center ("UIHC").

34. On May 22, 1990, Starbeck was seen at the UIHC. He was seen by physical therapist Jeff Nicholson who noted that Starbeck had back and left leg pain. Nicholson also noted that Starbeck had numbness in the genital area as well as the left leg. Nicholson requested that Starbeck's CAT scan and other medical records be sent to him. Plans for a return appointment were made.

35. On May 23, 1990, Museus requested that Starbeck's medical records be sent to the UIHC.

36. On May 31, 1990, Dr. Paul Loeffelholz, the medical director for the Iowa Department of Corrections reviewed Starbeck's condition and determined that future treatments would be provided by the UIHC.

37. On June 14, 1990, Starbeck was transferred to IMR.

38. In a letter dated June 20, 1990, and addressed "To Whom it May Concern", Doctor Dowdle states:

I have reviewed the results of blood tests done on April 3, 1990. The liver enzymes for Robert Starbeck are abnormal. The patient would not be a candidate for surgical treatment until those were evaluated. With liver abnormalities like that, it would put him at some risk as far as an anesthetic is concerned.

39. From June 23, 1990 through July 13, 1990, Starbeck received undisclosed treatments for his back pain and informed of a future appointment at the UIHC.[1]

40. In a letter dated July 14, 1990, Todd J. Thun, an attorney representing Starbeck's former employer on his workers' compensation claim, wrote to Thalacker and informed him that Thunn's client would be willing to pay for Starbeck's back surgery.

41. On approximately July 19, 1990, Starbeck was diagnosed with hepatitis C.

42. On August 30, 1990, Starbeck was seen at the UIHC, and his back condition was evaluated by undisclosed individuals. He was given an epidural steroid injection to reduce his pain and swelling. Another appointment was made for Starbeck at the UIHC.

43. On September 28, 1990, Museus wrote to Chris Meek at the Iowa Department of Corrections to request that Starbeck be transferred to Minnesota in order that corrective back surgery could be performed. Museus pointed out that the cost of the surgery would be bore by a workers' compensation insurer and not the State of Iowa.

44. On October 25, 1990, Starbeck was seen again at UIHC. He was given a return appointment for another epidural steroid injection.

45. On October 30, 1990, Defendant Dennis Fear was assigned to escort Starbeck from IMR to the UIHC. Starbeck was placed in restraints, including handcuffs with

---

1. Starbeck's expert, Dr. Beverly R. Rosenfeld, D.O., states in a letter to Plaintiff's counsel dated March 31, 1993, that Starbeck had an appointment at the UIHC which was made on July 25, 1990, but subsequently cancelled by Defendant Jan Kula. The document upon which Dr. Rosenfeld bases this statement, however, does not appear of record. Furthermore, it is unknown when this appointment was to have occurred.

a "black box", pursuant to IMR policy and transported to the UIHC for his appointment.

46. On the October 30, 1990, trip, Fear applied the handcuffs and "black box" in a standard manner. Fear does not recall Starbeck complaining of pain or loss of feeling from the use of handcuffs or the "black box" during the time he transported Starbeck.

47. It is standard policy at IMR to place inmates in handcuffs with a "black box" and leg irons while transporting an inmate outside of IMR.

48. Starbeck refused to go to the UIHC for his November 2, 1990, appointment for an epidural injection.

49. From November 26, 1990 until December 27, 1990, Starbeck was in Minnesota pursuant to court order.

50. On March 4, 1991, Starbeck was seen for back pain. He was given medication and recommended to wear soft soled shoes.

51. On September 6, 1991, Starbeck wanted to discontinue the use of prescribed medications.

### B. Contested Facts

1. Whether the medical examinations Starbeck received on February 23, 1990, February 26, 1990, and March 6, 1990, by Dooley were adequately performed.

2. Whether the medical examination Starbeck received on March 8, 1990, by Dr. Popsisil was adequately performed.

3. Whether Starbeck could undergo the general anesthesia required for surgery given his liver ailments.

4. Whether Starbeck's liver condition was evaluated by an anesthesiologist during his confinement at the Correctional Center.

### III. CONCLUSIONS OF LAW

#### A. Standards for Summary Judgment

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from ju-

ries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 2552, 91 L.Ed.2d 265 (1986); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir. 1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing Fed. R.Civ.P. 56(c)).[2] A court considering a mo-

---

2. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,*

tion for summary judgment must view all the facts in the light most favorable to the non-moving party, here Starbeck, and give him the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

█ Procedurally, the moving parties, Defendants, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Defendants are not required by Rule 56 to support their motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Starbeck is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762

F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Starbeck fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Defendants are "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court

953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel,* 953 F.2d at 394.

turns to consideration of the defendants' motions for summary judgment.

## B. An Overview of the Eighth Amendment

In order to facilitate a better understanding of Starbeck's Eighth Amendment claims, the court will undertake a brief overview of Eighth Amendment jurisprudence. The Eighth Amendment prohibition of "cruel and unusual punishments" has its origin in English law.[3] *Furman v. Georgia,* 408 U.S. 238, 316, 92 S.Ct. 2726, 2765, 33 L.Ed.2d 346 (1972) (Marshall, J., concurring). Prior to the adoption of the English Bill of Rights in 1689, a prohibition against "excessive punishments in any form" had developed in English common law over the centuries. *See* Anthony F. Granucci, *"Nor Cruel and Unusual Punishments Inflicted:" The Original Meaning,* 57 Cal.L.Rev. 839, 844–47 (1969). The language used in the Eighth Amendment first appeared in the 1689 English Bill of Rights, which was drafted by Parliament and ratified at the accession of the new monarchs, William and Mary. *See Gregg v. Georgia,* 428 U.S. 153, 169, 96 S.Ct. 2909, 2922, 49 L.Ed.2d 859 (1976) (citing Granucci, *supra,* at 852).[4] In 1776, Virginia adopted verbatim this language from the English Bill of Rights in its own Declaration of Rights. *Furman,* 408 U.S. at 319, 92 S.Ct. at 2767 (Marshall, J., concurring). Eight other states soon adopted this clause, and in 1791 it became the Eighth Amendment to the United States Constitution. Granucci, *supra,* at 840.

In an analysis of the original meaning of the Eighth Amendment's "cruel and unusual" punishment clause, the Supreme Court recognized that:

> [t]he English version appears to have been directed against punishments unauthorized by statute and beyond the jurisdiction of the sentencing court, as well as those disproportionate to the offense involved.... The American draftsmen ... were primarily concerned, however, with proscribing

'tortures' and other 'barbarous' methods of punishment.

*Gregg,* 428 U.S. at 169–70, 96 S.Ct. at 2923 (joint opinion) (citing Granucci, *supra,* at 842, 860); *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The Eighth Amendment was adopted with the intention of placing limits on the government and the potential abuse of its power against persons convicted of crimes. *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 266, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989).

The earliest Eighth Amendment claims before the Supreme Court "focused on particular methods of execution to determine whether they were too cruel to pass constitutional muster." *Gregg,* 428 U.S. at 170, 96 S.Ct. at 2923 (citing *Wilkerson v. Utah,* 99 U.S. 130, 136, 25 L.Ed. 345 (1878); *In re Kemmler,* 136 U.S. 436, 447, 34 L.Ed. 519 (1890)). In these early cases, the Court restricted its Eighth Amendment inquiry to whether the methods of execution were torturous or barbarous within the Amendment's original meaning. *Estelle,* 429 U.S. at 102, 97 S.Ct. at 290. The Court, however, "has not confined the prohibition embodied in the Eighth Amendment to 'barbarous' methods that were generally outlawed in the 18th century. Instead, the Amendment has been interpreted in a flexible and dynamic manner." *Gregg,* 428 U.S. at 171, 96 S.Ct. at 2924. In *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the Supreme Court moved away from a historical interpretation of the Eighth Amendment and stated: "Time works changes, [and] brings into existence new conditions and purposes. Therefore a principle to be vital must be capable of wider application than the mischief which gave it birth. This is particularly true of constitutions." *Weems,* 217 U.S. at 373, 30 S.Ct. at 551. The Court went on to point out that the Eighth Amendment's cruel and unusual punishments clause has an "expansive and vital character," which "is not fastened to

---

**3.** The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" (emphasis added).

**4.** "The tenth declaratory clause of the bill reads: 'That excessive bail ought not to be required, nor excessive fines imposed; nor cruel and unusual punishments inflicted.'" Granucci, *supra,* at 852–53 (citation omitted).

the obsolete but may acquire meaning as public opinion becomes enlightened by human justice." *Id.* at 377–78, 30 S.Ct. at 553; *see also Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 597–98, 2 L.Ed.2d 630 (1958) ("[t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society"); *Gregg,* 428 U.S. at 172–73, 96 S.Ct. at 2924–25 ("the Eighth Amendment has not been regarded as a static concept"); *Estelle,* 429 U.S. at 102–03, 97 S.Ct. at 290 ("the Amendment proscribes more than physically barbarous punishments"); *Jackson v. Bishop,* 404 F.2d 571, 579 (8th Cir.1968) ("broad and idealistic concepts of dignity, civilized standards, humanity, and decency" help define the Eighth Amendment proscriptions).

"[P]ublic perceptions of standards of decency with respect to criminal sanctions are not conclusive." *Gregg,* 428 U.S. at 173, 96 S.Ct. at 2925. A penalty must also comply with the "dignity of man." *Id.* (quoting *Trop,* 356 U.S. at 100, 78 S.Ct. at 597). The punishment "must not involve the unnecessary and wanton infliction of pain [or] . . . be grossly out of proportion to the severity of the crime." *Id.* (citations omitted). "Until recent years, [however,] the Cruel and Unusual Punishment Clause was not deemed to apply at all to deprivations that were not inflicted as part of the sentence for a crime." *Hudson v. McMillian,* 503 U.S. 1, ——, 112 S.Ct. 995, 1005, 117 L.Ed.2d 156 (1992) (Thomas, J., dissenting). The Eighth Amendment was not considered to protect inmates from harsh treatment by prison officials. *Id.* "It was not until 1976—185 years after the Eighth Amendment was adopted—that [the] Court first applied it to a prisoner's complaint about a deprivation suffered in prison." *Id.* at ——, 112 S.Ct. at 1006. In *Estelle,* 429 U.S. at 102–03, 97 S.Ct. at 290, the Supreme Court extended the application of the cruel and unusual punishment clause to inmate deprivations which were not part of an inmate's sentence. *Hudson,* 503 U.S. at ——, 112 S.Ct. at 1001; *Wilson v. Seiter,* 501 U.S. 294, 296, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991).

### C. Deliberate Indifference to a Serious Medical Need

#### 1. Introduction

In *Estelle,* the court broadened the scope of the Eighth Amendment to include inadequate medical care given to prisoners. The court recognized that the Eighth Amendment proscribed more than just physically barbarous punishments by noting that the Eighth Amendment "embodied broad and idealistic concepts of dignity, civilized standards, humanity and decency. . . ." *Estelle,* 429 U.S. at 102, 97 S.Ct. at 290 (quoting *Jackson v. Bishop,* 404 F.2d 571, 579 (8th Cir.1968)). The court observed that punishments which are incompatible with society's evolving standards of decency or which involve the unnecessary and wanton infliction of pain violate the Eighth Amendment. *Estelle,* 429 U.S. at 102–03, 97 S.Ct. at 290.

The court relied on these principles in establishing a constitutional obligation for the government to provide prisoners medical care. The court recognized that an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so the prisoner will not receive any medical care. *Id.* at 103, 97 S.Ct. at 290. In the worst cases a failure to give adequate medical care may produce physical torture or a lingering death which clearly constitutes violations of the Eighth Amendment. *Id.* In less serious cases a denial of medical care may result in pain and suffering which does not serve a penological purpose. *Id.* The court concluded by holding that deliberate indifference to serious medical needs of prisoners constituted the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* at 104, 97 S.Ct. at 291. Mindful of the historical context of Eighth Amendment cruel and unusual punishment jurisprudence, the court now turns to Starbeck's claims that Defendants Thalacker, Kula, Dolley and Zeller's actions constitute deliberate indifference to a serious medical need.

#### 2. Deliberate Indifference—The Objection and Subjective Components

**a. Introduction.** In order to make out a successful claim of deliberate

indifference to serious medical needs Starbeck must meet the objective and subjective components of an Eighth Amendment violation. *Wilson*, 501 U.S. at 298, 111 S.Ct. at 2324. The objective component concerns whether an alleged deprivation is sufficiently serious to constitute an Eighth Amendment violation. *Id.* The objective component in a case where the prisoner is claiming inadequate medical care is met when the prisoner proves that his medical need is serious. *Hudson*, 503 U.S. at ——, 112 S.Ct. at 1000. The subjective component looks to whether a prison official acted with the requisite culpable state of mind to be considered as acting with a deliberate indifference to a prisoner's medical needs. *Id.* The culpable state of mind of deliberate indifference is shown if the prison officials deliberately deprive a prisoner of adequate medical care in response to a serious medical need or act recklessly in response to such a need.[5] Starbeck must successfully carry his burden of proof on both of these elements to establish a successful claim of deliberate indifference. *Helling v. McKinney*, —— U.S. ——, ——––——, 113 S.Ct. 2475, 2479–80, 125 L.Ed.2d 22 (1993).

■ **b. The Objective Component.** The objective component of an Eighth Amendment claim has its roots in contemporary standards of decency. *Hudson*, 503 U.S. at ——, 112 S.Ct. at 1000. Thus to meet the objective component, Starbeck must prove conduct by Defendants Thalacker, Kula, Dolley and Zeller which is adverse to social standards of decency. *Id.* In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Id.* In order to offend contemporary standards of decency, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if the needs are serious. *Id.*

■ Several federal court decisions provide significant guidance in determining whether Starbeck suffers from a serious medical need. A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1991); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *West v. Keve*, 571 F.2d 158, 162–63 n. 6 (3rd Cir.1978); *Johnson v. Vondera*, 790 F.Supp. 898, 900 (E.D.Mo.1992); *Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.N.H. 1977). Federal courts have frequently found that medical needs of prisoners which require surgery constitute serious medical needs and when combined with deliberate indifference shown by prison officials constitute an Eighth Amendment violation. *See e.g., Johnson v. Lockhart*, 941 F.2d 705 (8th Cir.1991) (inguinal hernia); *Warren v. Fanning*, 950 F.2d 1370 (8th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 111, 121 L.Ed.2d 68 (1992) (toenails which had become infected and had turned black); *Dace v. Solem*, 858 F.2d 385 (8th Cir.1988) (painful nasal condition); *Toombs v. Bell*, 798 F.2d 297 (8th Cir.1986) (painful gallstones); *Taylor v. Bowers*, 966 F.2d 417 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992) (ruptured appendix); *Mandel v. Doe*, 888 F.2d 783 (11th Cir.1989) (fracture in the hip joint which required surgery).

Federal courts have also found many physical medical needs which do not require surgery to be sufficiently serious to satisfy the objective component of an Eighth Amendment claims. *See e.g., Fields v. Gander*, 734 F.2d 1313 (8th Cir.1984) (infected teeth); *Mullen v. Smith*, 738 F.2d 317 (8th Cir.1984) (back and head injuries which prohibited prisoner from walking); *Miltier*, 896 F.2d at 852 (repeated complaints of chest pains, headaches, and dizziness which later resulted in prisoner's death); *Green v. Carlson*, 581 F.2d 669 (7th Cir.1978) (severe asthmatic

---

**5.** *See Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984); *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir.1982); *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir.1984); *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990); *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985); *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985); *Des Rosiers v. Moran*, 949 F.2d 15, 19 (1st Cir.1991).

attack which led to prisoner's death); *Payne v. Lynaugh*, 843 F.2d 177 (5th Cir.1988) (severe emphysema which required the use of oxygen equipment); *Bunton v. Englemyre*, 557 F.Supp. 1 (E.D.Tenn.1981) (broken hand).[6]

■ It is also important to note that to meet the objective component Starbeck need not prove he has a current serious medical need. The Supreme Court recently held that a prisoner states a cause of action under the Eighth Amendment if he alleges that prison officials, with deliberate indifference, exposed the inmate to levels of environmental tobacco smoke "that pose an unreasonable risk of serious damage to his future health." *Helling*, —— U.S. at ——, 113 S.Ct. at 2481.[7] The Court rejected the defendant's central thesis that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment. *Id.* —— U.S. at ——, 113 S.Ct. at 2477. Finally, the Court remanded the case "to provide an opportunity for McKinney to prove his allegations, which will require him to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation." *Id.* at ——, 113 S.Ct. at 2481–82.[8]

Many claims of inadequate medical care have failed to meet the objective component by failing to prove that the prisoner had a serious medical need. *See e.g., Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir.1990) (swollen wrists are not a serious medical need); *Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir.1986) (prisoner's sensitive skin condition caused by shaving was not a serious medical need); *Johnson v. Vondera*, 790 F.Supp. 898, 900 (E.D.Mo.1992) (headaches, neck pain and blurred vision did not establish a serious medical need for whirlpool treatments); *Ashford v. Barry*, 737 F.Supp. 1, 3 (D.D.C.1990) (being kicked in the leg does not establish a serious medical need); *Tyler v. Rapone*, 603 F.Supp. 268, 271–72 (E.D.Pa.1985) (prisoner's claim failed because he admitted his need for dental care and treatment for a cut were not serious medical needs); *Borrelli v. Askey*, 582 F.Supp. 512, 513 (E.D.Pa.1984) (slight visual impairment causing mild headaches and mild tension is not a serious medical need); *Griffin v. DeRobertis*, 557 F.Supp. 302, 306 (N.D.Ill.1983) (while aches and sore throats may not constitute serious medical needs, becoming ill to the point of spitting up blood does.)

■ Prisoners' claims have also failed when there is no cure or treatment for the

---

**6.** The principle that the medical need must be serious is not limited to physical needs but also extends to an inmate's mental health care needs. *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir.1990). Psychological disorders may constitute a serious medical need. *White v. Farrier*, 849 F.2d 322, 325 (8th Cir.1988); *Young v. Armontrout*, 795 F.2d 55 (8th Cir.1986); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir.1983), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). Thus prisoners have successfully proven that transsexualism is a serious medical need. *White*, 849 F.2d at 325; *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir.1987), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). Similarly an inmate who was diagnosed as a schizophrenic with suicidal tendencies was determined to have a serious medical need in *Greason v. Kemp*, 891 F.2d 829, 835–36 (11th Cir.1990).

**7.** Other cases have held that an unreasonable risk to future health are actionable under the Eighth Amendment. *Glick v. Henderson*, 855 F.2d 536, 539–40 (8th Cir.1988) (prisoner would state a colorable claim under § 1983 if he could show there is a pervasive risk of harm to inmates of contracting the AIDS virus and a failure of

prison officials to reasonably respond to that risk); *Todaro v. Ward*, 565 F.2d 48, 51 (2d Cir. 1977) (prison officials subjected inmates to grave and unnecessary risks, prison officials need not wait until an epileptic chokes on her tongue to act); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990) (involuntary exposure to a prison cell containing asbestos constitutes a claim of deliberate indifference to serious medical needs, the fact that the plaintiff was requesting preventative treatment does not make his medical need not to breathe asbestos any less serious).

**8.** In *McKinney*, the Court clarified what McKinney was required to prove regarding the objective component of his Eighth Amendment claim. The Court stated that McKinney must: (1) prove he is currently being exposed to the unreasonable risk to his future health; (2) make a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by the risk; and (3) demonstrate that the risk is not one that today's society chooses to tolerate. *McKinney*, —— U.S. at ——, 113 S.Ct. at 2482.

alleged serious medical need. *Bailey v. Gardebring,* 940 F.2d 1150, 1155 (8th Cir.1991), *cert. denied by Bailey v. Noot,* —— U.S. ——, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992) (prisoner's claim he was deprived of psychiatric care geared towards sexual offenders failed because there was no cure or generally accepted method of treatment for the prisoner's condition); *Warren v. Missouri,* 995 F.2d 130, 131 (8th Cir.1993) (since physical therapy would not have improved prisoner's wrist injury, prisoner did not have a serious medical need for such therapy); *Johnson,* 790 F.Supp. at 900 (since whirlpool treatments would not have cured prisoner's neck pain, headaches and blurred vision, the failure to implement such medically unnecessary treatment does not rise to the level of deliberate indifference). A condition for which there is no known or generally recognized method of treatment cannot serve as a predicate for the conclusion that failure to provide treatment constitutes "deliberate indifference to the serious medical needs of prisoners." *Bailey,* 940 F.2d at 1155 (quoting *City of Canton v. Harris,* 489 U.S. 378, 397, 109 S.Ct. 1197, 1209, 103 L.Ed.2d 412 (1989) (O'Connor, J., concurring)).

**▪ c. The Subjective Component.**
The subjective component of an Eighth Amendment claim requires that Starbeck prove Defendants Thalacker, Kula, Dolley and Zeller acted with a sufficiently culpable state of mind. An intent requirement is implicit in the Eighth Amendment proscription of cruel and unusual punishment, and acts which are accidental or inadvertent do not constitute punishment and do not violate the Eighth Amendment.[9] It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). "If the pain

inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting official before it can qualify as an Eighth Amendment violation." *Wilson,* 501 U.S. at 296–97, 111 S.Ct. at 2323–24.

**▪** The requisite state of mind in a case where a prisoner is alleging inadequate medical care is that a prison official must act with deliberate indifference. *Id.* at 302–03, 111 S.Ct. at 2326–27 (deliberate indifference constitutes wanton conduct prohibited by the Eighth Amendment). Starbeck must allege and prove acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle,* 429 U.S. at 105–06, 97 S.Ct. at 292. It is only through such indifference that the Eighth Amendment can be implicated. *Id.* Deliberate indifference may be shown by prison official's attitude and conduct in response to a prisoner's serious medical need. *McKinney,* —— U.S. at —— ——, 113 S.Ct. at 2479–80; *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291; *DesRosiers,* 949 F.2d 15, 19 (1st Cir.1991); *DeGidio v. Pung,* 704 F.Supp. 922, 955 (D.Minn.1989).

**▪** Federal courts have held that deliberate indifference is shown if prison officials deliberately deprive a prisoner of medical care where there is a serious medical need or act recklessly in the face of such a serious medical need. *Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984) *Branchcomb v. Brewer,* 669 F.2d 1297, 1298 (8th Cir.1982); *Miller v. Solem,* 728 F.2d 1020, 1024 (8th Cir.1984), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984) (prison officials may be liable either because they actually intended to deprive the prisoner of some constitutional right or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates); *Miltier,* 896 F.2d

---

9. "The infliction of punishment is a deliberate act intended to chastise or deter.... [I]f [a] guard accidently stepped on [a] prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word, whether we consult the usage of 1791, or 1868 or 1985." *Wilson,* 501 U.S. at 300, 111 S.Ct. at 2325 (quoting *Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir.1985)). Similarly, the court in *Estelle* stated it is not unconstitutional to

subject a prisoner to a second attempt to execute him after a mechanical malfunction thwarted the first attempt. *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291 (citing *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947)). The malfunction was an accident and did not constitute the wanton and unnecessary infliction of pain prohibited by the Eighth Amendment. *Id.*

at 851 (deliberate indifference may be shown by actual intent of reckless disregard); *Benson,* 761 F.2d at 339 (a plaintiff must prove deliberate indifference either by actual intent or reckless disregard); *Duckworth v. Franzen,* 780 F.2d 645, 652–54 (7th Cir.1985) (infliction of suffering on prisoners violates the Eighth Amendment only if the infliction is either deliberate or reckless in the criminal sense); *DesRosiers,* 949 F.2d at 19 (required state of mind that shows deliberate indifference can be met through deliberate acts and recklessness).

■ Recklessness in the face of a serious medical need occurs if the prison officials disregard a substantial risk of danger that is known or would be apparent to a reasonable person in the prison official's position. *Buckner v. Hollins,* 983 F.2d 119, 122 (8th Cir. 1993); *Benson,* 761 F.2d at 339; *Miltier,* 896 F.2d at 851; *DesRosiers,* 949 F.2d at 19. Thus, Starbeck must present sufficient evidence that the trier of fact could conclude the official acted with deliberate indifference. *Buckner,* 983 F.2d at 122–23 ("failure to intervene in order to stop Buckner's beating, particularly when Buckner was naked, handcuffed, and defenseless, would provide an ample basis for a jury to conclude that Veltrop acted with deliberate indifference . . .").[10]

■ However, a plaintiff must establish more than ordinary negligence on the part of prison authorities in responding to his medical needs to establish a claim of medical mistreatment under the Eighth Amendment. *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085; *Franzen,* 780 F.2d at 652–53 (Ordinary negligence and even 'gross negligence' are not enough). Treatment may violate the Eighth Amendment only if it involves something

more than a medical judgment call, an accident, or an inadvertent failure to give medical care. *Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir.1990); *see also Murrell v. Bennett,* 615 F.2d 306, 310 n. 4 (5th Cir.1980). A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084; *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292; *Taylor,* 966 F.2d at 421; *DesRosiers,* 949 F.2d at 19; *Miltier,* 896 F.2d at 851–52; *DeGidio,* 704 F.Supp. at 955; *Benson,* 761 F.2d at 339. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. Simply showing that another doctor in similar circumstances might have ordered different treatment only raises questions about medical judgment and does not show that the physician acted with deliberate indifference. *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir.1987), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 718, 98 L.Ed.2d 668 (1988). Many complaints of inadequate medical care fail because the prisoner has failed to prove that the prison official acted with a culpable mind greater than negligence. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 292 (whether an x-ray and different forms of treatment should have been given for prisoner's back injury at most constituted negligence); *Bellecourt v. United States,* 994 F.2d 427, 431 (8th Cir.1993) (the fact that prison doctor misdiagnosed the prisoner's condition and his method of physical examination and treatment may not have followed community standards does not amount to deliberate indifference); *DesRosiers,* 949 F.2d at 19–20 (prison official's failure to give prisoner assistance

---

**10.** The Seventh Circuit has taken a different position on the issue of what constitutes recklessness. In *Duckworth v. Franzen,* the subjective knowledge of the prison official is viewed as the determinative factor. 780 F.2d 645, 652–53. The Seventh Circuit in *Franzen,*

looked to the criminal law, which typically uses subjective mental standards, and held that recklessness violates the eighth amendment only if the prison official had "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's

failure to prevent it." *McGill v. Duckworth,* 944 F.2d 344, 348–49 (7th Cir.1991) (quoting *Franzen,* 780 F.2d at 653). The Seventh Circuit holds to the *Franzen* decision, and its subjective knowledge requirement. *Id.* Thus, in order to prevail on a deliberate indifference claim, the inmate "'must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.'" *King v. Fairman,* 997 F.2d 259, 261 (7th Cir. 1993) (quoting *Duane v. Lane,* 959 F.2d 673, 677 (7th Cir.1992) (citations omitted)).

with bandage changes and suggested number of showers following surgery at worst amount to some specie of carelessness); *Benson*, 761 F.2d at 341 (prisoner's allegations that prison physicians failed to give him prescribed medications and a cervical collar for his neck injury constituted a claim of negligence).

 It is important to note, however, that a claim of deliberate indifference is not disproved merely by showing that a physician diagnosed or treated a prisoner. *Smith*, 919 F.2d 90, 93 (8th Cir.1990). When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all, or that which may constitute recklessness, may amount of deliberate indifference. *Mandel*, 888 F.2d at 789 (although an inmate physician assistant saw the prisoner on numerous occasions the assistant never notified a doctor of the prisoner's injury and never obtained an x-ray). Diagnosis or treatment which is grossly incompetent or so deviates from professional standards of conduct can rise to the level of deliberate indifference. *Smith*, 919 F.2d at 93 (court reversed summary judgment when district court had failed to look into the medical records of the prisoner and had done no exploration into the standard of care for terminating the prisoner's medication); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 111, 121 L.Ed.2d 68 (1992).

### D. Analysis of Indifference Claims

#### 1. Serious Medical Condition

 Starbeck's back condition constitutes a serious medical need. Serious medical needs have been defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Johnson v.*

*Busby*, 953 F.2d 349, 351 (8th Cir.1991). It is uncontested that Starbeck's back condition is sufficiently serious so as to constitute a severe medical need for Eighth Amendment purposes.[11]

The United States Court of Appeals for the Eighth Circuit has "repeatedly held that a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail to rise to the level of a constitutional violation." *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir.1992) *cert. denied sub nom. Bowers v. Taylor*, —— U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992); *DesRosiers*, 949 F.2d at 20 (prisoner disagreed with the established practice of having prisoners change their own bandages and thought he should have been given more showers); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir.1990) (prisoner's disagreements on location of rehabilitation for burn injuries, amounts of pain medication, and frequency of bandage changes failed to state deliberate indifference); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir.1989) (prisoner's disagreement about treatment for mental deficiency, surgery for hernia, hearing deficiency, and nutritional deficiency found insufficient); *Lair v. Ogelsby*, 859 F.2d 605, 606 (8th Cir.1988) (mere disagreement about which medication should have been prescribed does not constitute an Eighth Amendment violation); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir.1985) (prisoner's disagreement about treatment of pain in his lower back and arm did not constitute an Eighth Amendment violation); *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir.1981) (mere disagreement over diagnosis and medication involving back and joint pain did not constitute an Eighth Amendment violation); *Cognato v. Ciccone*, 558 F.2d 512 (8th Cir. 1977), *cert. denied*, 434 U.S. 974, 98 S.Ct. 530, 54 L.Ed.2d 465 (1977) (prisoner's disagree-

11. Defendant Kula asserts that Starbeck's need for soft soled shoes does not constitute a serious medical need. The shoes, however, were prescribed to treat Starbeck's back problems, a serious medical need. Furthermore, Defendant Kula has offered no explanation for the delay in Starbeck being able to obtain these shoes. Indeed, the record regarding this portion of the complaint is no more developed now than it was on July 30, 1993, when Judge Melloy denied that part of Defendants Thalacker and Kula's motion to dismiss. Because Defendant Kula does not contest the allegations in the complaint on this point, and the record before the court is not discernibly different than when Judge Melloy denied that portion of her motion to dismiss, the court will deny this portion of her motion for summary judgment.

ment over medication did not raise a claim under the Eighth Amendment, however, subjective responses of the inmate may be a factor in considering a claim of deliberate indifference); *Massey v. Hutto,* 545 F.2d 45, 46 (8th Cir.1976) (disagreement over physical abilities of inmate did not constitute an Eighth Amendment violation); *Seward v. Hutto,* 525 F.2d 1024, 1024–25 (8th Cir.1975) (prisoner's disagreement over diagnosis did not state an Eighth Amendment claim); *see also Estelle,* 429 U.S. at 107, 97 S.Ct. at 292 (prisoner's claims that he should have received x-ray and other tests for back injury found insufficient); *Czajka v. Caspari,* 995 F.2d 870, 871 (8th Cir.1993) (prisoner's disagreement with prison doctor about delaying surgery found insufficient).

### 2. Defendants Dolley and Zeller

■ Defendants Dolley and Zeller contend that Starbeck was denied surgery because Dr. Popsisil was of the opinion that Starbeck's liver condition prevented general anesthesia from being administered. Defendants Dolley and Zeller, however, ignore completely the statement in Starbeck's attorney's affidavit that she had a conversation with Zeller and he informed her that Starbeck would not be permitted to have the surgery because the State of Iowa did not want to pay the costs of guards for Starbeck during his recuperation. This allegation could come as no surprise to Defendants Dolley and Zeller. Judge Melloy pointed out in his denial of their motion for summary judgment that "[i]f true, such an allegation could rise to deliberate indifference to the Plaintiff's serious medical need." Order, July 30, 1993 at 7. Thus, a material question of fact has been generated in this case as to what motivated Defendants Dolley and Zeller's refusal to permit surgery on Starbeck. Therefore, the court shall deny Dolley and Zeller's Motion for Summary Judgment.

### 3. Defendants Thalacker and Kula

■ Defendants Thalacker and Kula contend that they provided Starbeck with medi-

cal treatment both at IMR and UIHC. Thus, their denial of surgery was due to a difference of medical opinion, and not willful indifference to Starbeck's condition. Mere proof that an inmate has obtained some medical care, however, does not mean that the course of treatment of an inmate's medical problems cannot manifest deliberate indifference. *Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir.1990).

The court concludes here that a question of material fact has been generated as to whether Defendants' treatment of Starbeck rose to the level of recklessness. The key here is the level of examinations which were performed on Starbeck in response to his continued complaints regarding his back. It is uncontested that Starbeck was transferred to IMR on June 14, 1990. The course of treatment which followed from June 23, 1990, through July 13, 1990 is undisclosed. On July 19, 1990, Starbeck was diagnosed with hepatitis C. Starbeck's expert, Dr. Bryan T. Person, a board certified anesthesiologist, states that Starbeck's hepatitis C would not prevent him from safely undergoing anesthesia. Starbeck, however, was not seen again at UIHC until the end of August. The extent of his evaluation at UIHC and who conducted the examination is not disclosed in the record before the court.[12] Furthermore, Defendants Thalacker and Kula have produced no medical records or opinions which contradict the surgical recommendations of Starbeck's Minnesota doctors nor medical reports recommending a different course of treatment than that recommended by those doctors. The record is completely vacant as to a medical reason why the course of treatment taken was chosen. The level of care provided Starbeck continued despite near constant complaints by Starbeck concerning pain in back and numbness in his lower extremities. Therefore, having concluded that a question of material fact has been generated as to whether Defendants Thalacker and Kula were reckless in their care of Starbeck given the fact that three orthopedists had recommended that he receive sur-

---

12. The court notes that on his May 22, 1990, visit to UHIC, Starbeck was seen by a physical thera-

pist, not an orthopedic specialist.

gery for his herniated disk and Defendants Thalacker and Kula took no affirmative steps to provide Starbeck with such treatment or its medical equivalent, the court shall deny this portion of Defendants Thalacker, Kula and Fear's Motion for Summary Judgment.

### E. Defendant Fears Use of Restraints

■ Starbeck also alleges that excessive physical force was used by Defendant Fear when he was transported from his cell to the UIHC and back to his cell, thereby subjecting him to "cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth." *Estelle,* 429 U.S. at 101, 97 S.Ct. at 289. In *Whitley,* the Supreme Court defined cruel and unusual punishment in the context of prison security. "After incarceration, only the 'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)).

What constitutes an "unnecessary and wanton infliction of pain ... varies according to the nature of the alleged constitutional violation." *Hudson,* 503 U.S. at ——, 112 S.Ct. at 998 (citing *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084). In *Whitley,* in the context of prison disturbances, the Court held that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub. nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).[13]

When prison officials are faced with a riot or lesser disruption, they must act quickly and decisively to maintain or restore discipline. *Hudson,* 503 U.S. at ——, 112 S.Ct. at 998–99. The Supreme Court has recognized that " 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators' ... [who] 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Whitley,* 475 U.S. at 321–22, 106 S.Ct. at 1085 (citations omitted); *see Campbell v. Grammer,* 889 F.2d 797, 801 (8th Cir.1989); *Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir.1988); *see also Stenzel v. Ellis,* 916 F.2d 423 (8th Cir.1990) (court refused to second guess prison officials' judgment given the "broad administrative and discretionary authority" accorded by the courts). This deference, however, "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley,* 475 U.S. at 322, 106 S.Ct. at 1085.

After the Court's decision in *Whitley,* the "unnecessary and wanton infliction of pain" standard established by the Court in the context of a riot situation was extended to other " 'routine' incidents involving the use of force to maintain or restore prison security and discipline." *Cowans v. Wyrick,* 862 F.2d 697 (8th Cir.1988) (McMillian, J., concurring) (citing *Ort v. White,* 813 F.2d 318, 323–25 (11th Cir.1987) (citing cases)); *see also Hudson,* 503 U.S. at ——, 112 S.Ct. at 999 (citing cases); *see also Stenzel v. Ellis,* 916 F.2d 423, 427 (1990) (Eighth Circuit applied *Whitley* standard to incident where inmate was forcibly moved to isolation). *But see Wyatt v. Delaney,* 818 F.2d 21, 23 (8th Cir.1987)

---

**13.** Justice Marshall, writing for the dissent, disagreed with the majority in respect to the appropriate standard applied to determine the unnecessary and wanton infliction of pain in a riot context. He agreed "that the threshold for establishing a constitutional violation under these circumstances is high." *Whitley,* 475 U.S. at 328, 106 S.Ct. at 1089 (Marshall, J., dissenting). He did not agree, however, with the lessening of constraints imposed on prison authorities by the Eighth Amendment in a riot situation. *Id.* Justice Marshall believed the higher standard requiring force to be used "maliciously and sadistically for the very purpose of causing harm" was not justified by precedent, and was inappropriate because it requires courts to "resolve an issue of fact that will often be disputed and properly left to the jury." *Id.*

(held that fourth prong of *Whitley* test, whether force was applied maliciously and sadistically for the purpose of causing harm, was inapplicable in excessive physical force case which did not involve a prison disturbance or prison security measure).[14] In *Hudson*, the Supreme Court followed this trend, holding that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at ——, 112 S.Ct. at 999.[15]

▉ In determining whether the use of force by a correctional officer was wanton and unnecessary, the court must consider:

the need for force; the correlation between the need for force and the amount of force used; the extent of the injury; "the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them"; and any attempt to "temper the severity" of the response.

*Stenzel*, 916 F.2d at 427 (quoting *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1084); *see also Hudson*, 503 U.S. at ——, 112 S.Ct. at 999.

In *Moody v. Proctor*, 986 F.2d 239, 241 (8th Cir.1993), the Eighth Circuit held that correctional officers did not violate the plaintiff's Eighth Amendment rights when they inflicted physical pain and serious injuries to his wrists on several occasions by applying a "black box" restraining device over the chain and lock area of his handcuffs while transporting him to a hospital. *Id.* The court instructed that:

We are persuaded by the Fifth Circuit's reasoning that a policy requiring all prisoners to wear a black box when outside of

the prison does not violate the Eighth Amendment because, although the black box causes discomfort, its use is penologically justified "by the greater risk of escape ... and the reduced number of guards." *Fulford v. King*, 692 F.2d 11, 14 (5th Cir.1982). Moreover, although Moody suffered injury as a result of defendants' actions, we conclude there was no evidence that defendants acted maliciously and sadistically, *see Hudson v. McMillian*, 503 U.S. ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), or with deliberate indifference, *see Wilson v. Seiter*, 501 U.S. 294, 302–03, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991).

*Id.* at 241–42.

In determining whether the policy of using the black box in itself amounted to cruel and unusual punishment, the Eighth Circuit Court of Appeals was persuaded by the Fifth Circuit's reasoning in *Fulford v. King*, 692 F.2d 11, 14 (5th Cir.1982). The Fifth Circuit held in *Fulford* that:

Requiring all CCR prisoners to wear a black box when outside the prison does not violate the eighth amendment. Its use may inflict some discomfort, such as numbness of the arms and temporary marks, but the record does not show that prisoners are exposed to great pain or that any of their discomfort is occasioned either deliberately, as punishment, or mindlessly, with indifference to the prisoners' humanity. The box's use outside of the prison is for a rational reason, security, and is directed by a standard prison policy, not left to unfettered discretion of guards. Under these circumstances, it is not within our power to substitute our judgment for that of the prison officials.

*Id.* at 14–15 (footnote omitted).

▉ Here, Starbeck has not contradicted in any way the assertions made by Defendant

---

14. This aspect of the Eighth Circuit's decision in *Wyatt* was clearly overruled by the Supreme Court's holding in *Hudson* that the *Whitley* test was to be applied in all excessive force cases. *See Hudson*, 503 U.S. at ——, 112 S.Ct. at 999.

15. The majority viewed the malicious and sadistic standard as necessary to show that an unnecessary and wanton infliction of pain was exerted

by prison officials in any excessive force situation. *Hudson*, 503 U.S. at ——, 112 S.Ct. at 999. Justice Stevens, however, in a concurring opinion, believed the malicious and sadistic standard was a separate and higher standard than the unnecessary and wanton infliction of pain standard. *Id.* at ——, 112 S.Ct. at 1002. He believed it was wrong for the majority to apply this higher standard to cases where no prison disturbance existed. *Id.*

Fear in his affidavit that he applied the handcuffs and black box in a standard manner for the trip to the UIHC on October 30, 1990, and that Starbeck did not complain during that trip about pain or loss of feeling. Therefore, given that record, the court concludes that Defendant Fear is entitled to summary judgment against Starbeck on his complaint that Fear violated his Eighth Amendment rights.

## IV. CONCLUSION

Therefore, for the reasons set forth above, the court concludes that:

1. that portion of Defendants Kula, Thalacker and Fear's Motion for Summary Judgment concerning allegations in the complaint that Defendant Thalacker and Kula were intentionally indifferent to Starbeck's medical need shall be **DENIED** on the ground that a material question of fact has been generated as to whether Defendants Kula and Thalacker were reckless in their care of Starbeck;

2. that portion of Defendants Kula, Thalacker, and Fear's motion for summary Judgment concerning Fear's use of a black box during his transportation of Starbeck is **GRANTED** on the basis that Starbeck has not generated a material question of fact regarding Fear's actions;

3. that Defendants Dolley and Zeller's Motion for Summary Judgment is **DENIED** on the ground that a material question of fact exists concerning the motivating factor in denying Starbeck treatment for a serious medical condition.

**IT IS SO ORDERED.**